# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.   '22 MJ02025
)
LG G Pad 5 Tablet )
Seizure No. 2022250300023701 - 007 )
IMEI: 352986561011168 )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated by reference herein.

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. sec. 841, 846 | Distribution and conspiracy to distribute controlled substances |
| 21 U.S.C. sec. 952, 960 | Importation of controlled substances |
| 21 U.S.C. sec. 963 | Conspiracy to import controlled substances |

The application is based on these facts:

See attached Affidavit of Special Agent Victor Lara, incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Victor Lara*
Applicant's signature

Special Agent Victor Lara, HSI
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone    *(specify reliable electronic means)*.

Date:    06/03/2022 June 4, 2022

Judge's signature

City and state:   San Diego, CA                  Hon. Michael S. Berg, U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT

I, Special Agent Victor Lara, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> LG G Pad 5 Tablet
> Seizure No. 2022250300023701 - 007
> IMEI: 352986561011168
> ("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841, 846. 952, 960, and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Fidencio Arellano CUEVAS ("Defendant" or "CUEVAS") for importing approximately 15.86 kilograms of methamphetamine from Mexico into the United States. The Target Device is currently in the custody of Homeland Security Investigations and located at 2051 N. Waterman Ave. Suite 100 El Centro, CA 92243.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## TRAINING & EXPERIENCE

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since June 2016. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge (ASAC), in Calexico, California. I am a graduate of the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my

1

training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular devices, including telephones and tablets like the Target Device. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the Calexico West and East Ports of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular devices (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data,

slack space, and temporary or permanent files contained on or in the cellular device. Specifically, searches of cellular devices of individuals involved in the importation of narcotics may yield evidence:

    a. tending to indicate efforts to deliver controlled substances from Mexico to the United States, or to sell or distribute controlled substances in the United States;

    b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, phone numbers – that may contain electronic evidence regarding efforts to deliver controlled substances from Mexico to the United States to traffic, sell or distribute controlled substances in the United States or to conduct money laundering activity;

    c. tending to identify co-conspirators, criminal associates, or others involved in efforts to deliver controlled substance from Mexico to the United States or to traffic, sell or distribute controlled substances in the United States;

    d. tending to identify travel to or presence at locations involved in efforts to deliver controlled substance from Mexico to the United States, or to traffic, sell or distribute controlled substances in the United States;

    e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On January 17, 2022, CUEVAS entered the United States from Mexico at the Calexico, California West Port of Entry. He was the driver and sole occupant of a 2012 Honda Civic. At primary inspection, gave two negative customs declarations and told the Customs and Border Protection ("CBP") officer he had been returned to the United States by Mexican Customs because, upon attempting to enter Mexico, he did not have the appropriate documents for his vehicle. CUEVAS said he was going to Mexico to visit his girlfriend. The CBPO referred CUEVAS and the vehicle to vehicle secondary for further inspection.

8. In secondary inspection, CBP officers located four plastic-wrapped packages concealed within the backrests of the front seats. The packages weighed 15.86 kilograms (34.95 pounds) and field-tested positive for methamphetamine. CUEVAS was arrested.

9. Post-arrest, CUEVAS was advised of his *Miranda* rights. CUEVAS waived

3

his rights and agreed to talk to agents. In summary, CUEVAS stated that he had knowingly smuggled drugs through the same port of entry two days earlier. CUEVAS stated that the drugs found in his vehicle were part of the load he had imported two days prior, January 15, 2022, and he claimed, in summary, that the traffickers to whom he brought that load forgot to remove the packages within the seats when they removed other packages from the vehicle. CUEVAS stated he was offered to cross drugs by a subject whom CUEVAS claimed offered $4,000 to CUEVAS to cross 40 pounds of methamphetamine. CUEVAS stated that thus far he had been paid $2,000. CUEVAS also admitted to previously crossing drugs for another individual who offered CUEVAS $2,500 to cross a tank possibly full of liquid methamphetamine.

10.  During the interview, CUEVAS also admitted that he helps a friend transport drugs outside of the Imperial Valley, to locations such as Phoenix, Arizona and Los Angeles, California. CUEVAS indicated that the individual for whom he was importing methamphetamine is related to the friend with whom he works to further transport drugs outside of the Imperial Valley.

11.  A review of CUEVAS's border crossing records also reveals that between September 14, 2021 and January 17, 2022, CUEVAS crossed into the United States from Mexico 23 times between June 2021 and the date of his arrest, January 17, 2022, with the first crossing in that timeframe on July 30, 2021. That crossing was as a pedestrian, but he then entered the United States by vehicle three times between August 2 and 9, 2021, and 14 other times in a vehicle since then. A review of the crossing records associated with the Honda Civic involved in CUEVAS's arrest reveals approximately 16 inbound crossings from Mexico into the United States, with the first being on December 10, 2021 and the most recent being on January 17, 2022. Crossing records confirm that CUEVAS and the vehicle entered the United States on January 15, 2022, two days before his arrest in this case.

12.  Based on my training and experience, individuals involved in drug trafficking often make border crossings in load or other vehicles as part of their work with a conspiracy

4

and to prepare for smuggling narcotics: for instance, to establish a crossing history of a person and/or a vehicle. Further, individuals who are trusted with drugs for import and/or distribution often are involved in a conspiracy often are involved in the drug-trafficking organization for a substantial period of time. Here, I believe CUEVAS has been involved in drug-trafficking activities for at least several months prior to his arrest. I believe there is probable cause to search the Target Device from July 1, 2021 up to and including January 17, 2022, for evidence of the crimes discussed herein and as set forth in Attachments A and B.

13. The Target Device was found in CUEVAS's possession and was seized at the time of arrest. During the interview, CUEVAS was shown the Target Device and identified the Target Device as belonging to a friend of his who owed him money, but that CUEVAS had been given the tablet as a payment. Despite CUEVAS's claim that the Target Device belonged to a friend and was given to him to pay off a debt, I believe there is probable cause to believe that evidence of drug trafficking is likely to exist on the Target Device. This is for three reasons. First, based on my training and experience, I believe that individuals involved in drug trafficking will often attempt to distance themselves from incriminating evidence, especially electronic and mobile devices that may contain substantial evidence of the criminal activity.

14. Second, even if CUEVAS were given the Target Device as payment for a debt, based on my training and experience, I know that individuals involved in drug trafficking who are unable to pay a drug-related debt will often pay that debt using things other than money, such as vehicles, tools, electronic devices, and other things of monetary value. Given that CUEVAS admitted to being involved with others both to import controlled substances and to distribute them further into the United States, I believe that CUEVAS may have been given the Target Device by a co-conspirator or customer in payment of a drug-related debt. Data contained on the Target Device would thus likely reveal the identity of the individual who originally owned the Target Device, which, along with other investigative efforts, could identify CUEVAS's associates and co-conspirators that are

5

involved in drug trafficking.

15. Third, the Target Device was located in CUEVAS's possession. Even if CUEVAS is to be believed that the Target Device originally belonged to a friend, CUEVAS stated he was given the Target Device in payment for a debt and the Target Device could be used CUEVAS. I also note that both CUEVAS's Samsung cellphone, which was seized incident to his January 17, 2022 arrest, and the Target Device, which was seized contemporaneously, run on the Android mobile operating system. Based on my training and experience, I know that devices on the same operating system can allow syncing of data, including apps, account information, messages, and other information, across multiple devices, such as between a cellphone and a tablet.

16. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the importation of controlled substances into the United States and the further distribution of such substances throughout the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on **July 1, 2021 up to and including January 17, 2022**.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the device's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can be tablets, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular devices do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular device models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the device and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the

identification and extraction of data will complete the analysis within 90 days of the date the warrant is signed, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20. Law enforcement has not previously attempted to obtain the evidence sought by this warrant. Defendant consented to a search during his post-*Miranda* interview, but no extraction from the Target Device was obtained at that time.

### CONCLUSION

21. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Victor Lara*
Special Agent Victor Lara
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this ~~3rd~~ 4th day of June.

_____
Honorable Michael S. Berg
United States Magistrate Judge

8

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

    LG G Pad 5 Tablet
    Seizure No. 2022250300023701 - 007
    IMEI: 352986561011168
    ("Target Device")



The Target Device is currently in the possession of Homeland Security Investigations located at 2051 N. Waterman Ave. Suite 100 El Centro, CA 92243.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the device described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the device for evidence described below. The seizure and search of the device shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the device will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **July 1, 2021, up to and including January 17, 2022**:

a. tending to indicate efforts to deliver controlled substances from Mexico to the United States, or to sell or distribute controlled substances in the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, phone numbers – that may contain electronic evidence regarding efforts to deliver controlled substances from Mexico to the United States to traffic, sell or distribute controlled substances in the United States or to conduct money laundering activity;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to deliver controlled substance from Mexico to the United States or to traffic, sell or distribute controlled substances in the United States;

d. tending to identify travel to or presence at locations involved in efforts to deliver controlled substance from Mexico to the United States, or to traffic, sell or distribute controlled substances in the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963.